IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CYNTHIA JANE HURST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18cv777-WC |
| | ) | |
| ANDREW SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Cynthia Jane Hurst ("Hurst" or "Plaintiff") filed a Title II application for a period of disability and disability insurance benefits on November 17, 2015. R. 11.  She also filed a Title XVI application for supplemental security income on November 17, 2015. R. 11.  In both applications, she alleged disability beginning April 3, 2015. R. 11.  Both applications were denied initially on February 18, 2016.  R. 11.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on May 10, 2017. R. 11.  Following the hearing, the ALJ issued a partially favorable decision on January 16, 2018. R. 22.  The Appeals Council denied Plaintiff's request for review on April 9, 2018. R. 1–4.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

---

[1] Andrew Saul is now the Commission of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. Proc. 25(d). See also § 205(g) of the Social Security, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

1986).  The case is now before the Court for review of that decision under 42 U.S.C. § 405(g).  Based on a review of the record and the briefs of the parties, the Court AFFIRMS the Commissioner's decision.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).  "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact and even if the evidence preponderates against the Commissioner's findings.  *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584

n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*." Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

## III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based on proof of indigence and disability. *See* 42

U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to do the following:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security uses a five-step, sequential evaluation process to determine if a claimant is entitled to benefits:

(1)     Is the person currently unemployed?

(2)     Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in Listing of Impairments in Appendix I of 20 C.F.R. Pt. 404, Subpt. P?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2010). An affirmative answer to any question leads either to the next question or, on Steps 3 and 5, to a finding of disability. A negative answer to any question except Step 3 leads to a determination of not disabled. *McDaniel v. Bowen,* 800 F.2d at 1030; 20 C.F.R. § 416.920(a)–(f).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform Steps 4 and 5, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and non-exertional limitations. *Id.* at 1242–43. At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "disabled" or "not disabled." *Id.*

## IV. ADMINISTRATIVE PROCEEDINGS

Hurst's date of birth is October 25, 1962. R. 87. On the date of alleged onset, she was an individual closely approaching advanced age. R. 19. *See* 20 C.F.R. 404.1563(d) and 416.963(d). When she turned 55 on October 25, 2017, her age category changed to an individual of advanced age. R. 19. *See* 20 C.F.R. 404.1563(e) and 416.963(e). The claimant has a limited education in that she completed only the eighth grade. R. 19–20.

Following the administrative hearing in this case and employing the five-step process, the ALJ found at Step One that Plaintiff has not engaged in substantial gainful activity since the alleged date of onset. R. 13. At Step Two, the ALJ found that the claimant has had the following severe impairments since the alleged date of onset of April 3, 2015, that significantly limit her ability to perform basic work activities as required by SSR 85-28: Chronic Obstructive Pulmonary Disease, Hypothyroid, Anxiety, and Depression. R. 13. However, in Step Three, the ALJ found that, since the alleged date of onset, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. R. 14.

At Step Four, the ALJ found that the Plaintiff could perform a reduced range of light work, as set forth below:

> [S]ince April 3, 2015, the claimant has had the residual functional capacity to perform light work as defined by 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant needs the ability to alternate to sitting for 5 minutes after every two hours of standing or one hour of walking. The claimant can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. The claimant can frequently stoop, kneel, crouch, and crawl. The claimant can never operate a motor vehicle as part of her primary vocation. The claimant can occasionally work in weather, humidity, wetness but only frequently in extreme cold or extreme heat. The claimant can occasionally work around dust, odors, fumes, and other pulmonary irritants. The claimant is capable of performing simple and routine tasks and making simple work related decisions. The claimant can also handle simple changes in her work setting.

R. 16. The ALJ then concluded that Plaintiff has past relevant work as a bagger, deli worker (gas station), and food prep worker but that she is unable to perform past relevant work as actually or generally performed. R. 19.

In Step Five, the ALJ concluded there were jobs existing in significant numbers in the national economy that Hurst could have performed before October 25, 2017 (the date the claimant's age category changed). R. 20. Based on the testimony of the VE, the ALJ then identified the following representative occupations based on Hurst's age, education, work experience, and RFC: vacuum former operator, moulding machine tender, and stamping machine tender. R. 20. Thus, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act before October 25, 2017. R. 21. The ALJ then concluded, beginning October 25, 2017, and continuing through the date of the ALJ's decision, that Hurst was disabled pursuant to a direct application of Medical-Vocational Rule 202.01. R. 21.

## V.     PLAINTIFF'S CLAIMS

Plaintiff claims that the ALJ's finding that she has had the residual functional capacity since April 3, 2015, to perform light work with certain exertional and non-exertional limitations is not supported by substantial evidence because (1) Dr. Norman Garrison's opinion restricted Plaintiff to never lifting up to twenty pounds and only occasionally lifting up to ten pounds and (2) the determination that Plaintiff has the RFC to perform light duty jobs is inconsistent with the determination that she cannot perform her past light duty jobs. Doc. 17 at 5–7.

## VI.     DISCUSSION

### (A)     Dr. Garrison's Opinion

As mentioned above, Hurst alleges that she is disabled because she has chronic obstructive pulmonary disease (COPD), hypothyroidism, anxiety, and depression, and she claims a disability onset date of April 3, 2015.  R. 11, 13.  Plaintiff saw Dr. Garrison once for a consultative examination on June 20, 2017. R. 447–48.  On the first page of his report, Dr. Garrison noted that Hurst was complaining of shortness of breath but that she could sit and stand for up to two hours, walk about 100 yards, lift and carry 12–15 pounds, handle objects okay, squat, and walk on her toes and heels okay. R. 448.  He also discussed her pulmonary function test, about which he opined: "I do not think the patient gave her full effort on this with clear lungs. I think she could have done better than this. I do not think the patient has any obstructive lung disease of any significance.  If she has COPD, it is a very mild case." R. 448.  On the second page of his report, he noted that her lungs were clear without wheezing, rails, or rhonchi. R. 449.  Finally, in his conclusion, he wrote, "It

is my opinion that the patient is <u>NOT VALID</u> for SSI benefits." R. 450 (emphasis in original).

Included with his disability determination is a range of motion chart and several pages containing a more detailed assessment of Hurst's ability to do work-related activities. R. 451–58. The range of motion findings are normal. R. 453. However, in the detailed assessment of activities, Dr. Garrison indicated that Hurst can carry or lift up to ten pounds only occasionally and that she can never lift or carry eleven or more pounds. R. 452. He indicated that she can alternate sitting for two hours, standing for four hours, and walking for one hour in an eight-hour work day. R. 454. Plaintiff can sit thirty minutes, stand two hours, and walk thirty minutes for 200 yards without interruption. R. 454. Dr. Garrison marked "occasionally" with respect to all other activities on the form, such as reaching, reaching overhead, handling, fingering, feeling, pushing, and pulling, operating foot controls, climbing stairs and ramps, balancing, stooping, kneeling, and crouching, but he indicated that she can never crawl or climb ladders or scaffolding. R. 455–56.

### (1) Dr. Garrison's opinion is internally inconsistent.

Although Hurst argues that Dr. Garrison's limitations should have been incorporated into her RFC, it should be noted initially that he was a consultative physician and thereby not entitled to the deference given to treating physicians. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (citing *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987) (stating that a doctor who examines a claimant on one occasion is not considered a "treating physician")). Furthermore, a medical provider's opinion can be disregarded when the opinion is conclusory or internally inconsistent. *Davis v. Comm'r*,

No. 04-12482, 2004 WL 3723521, at *3 (11th Cir. Nov. 15, 2004) (citing *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991)).

Dr. Garrison's examination of Hurst showed normal findings with clear lungs, no neck pain, normal sensory and motors functions, normal orientation, and normal range of motion, and he expressly concluded that she was "not valid" for disability benefits. Nonetheless, he placed strict limitations on her ability to perform certain physical activities, stating, for example, that she can never lift or carry more than eleven pounds and only occasionally lift up to ten pounds. These restrictions do not comport with his normal findings during his examination of Hurst. Not only are Dr. Garrison's limitations inconsistent with his examination and conclusion of not disabled, some of his limitations contradict each other. For example, he stated that she can stand for four hours but can only sit for two hours during an eight-hour day. He stated that she can lift and carry 12–15 pounds, but he also stated that she can never lift more than eleven pounds. He stated that she can walk 100 yards, but he also stated that she can walk 200 yards. Thus, the Court finds that the ALJ was correct in determining that Dr. Garrison's opinion was internally inconsistent and entitled to little weight. *See Hacia v. Comm'r of Soc. Sec.*, 601 F. App'x 783, 785 (11th Cir. 2015) (finding that ALJ had good cause to discount treating physician's opinion when his conclusions were internally inconsistent and contradicted by treating notes and medical records); *Wind v. Barnhart*, 133 F. App'x. 684, 691–93 (11th Cir. 2005) (affirming ALJ's decision not to give significant weight to treating psychiatrist's opinion deemed internally inconsistent and not reconcilable with other evidence); *Lucas v. Colvin*, No. 1:15-CV-2936-JFK, 2016 WL 4945347, at *8 (N.D. Ga. Sept. 16, 2016) (finding ALJ

had good cause to reject doctor's opinion because it was inconsistent with his own treatment notes and rest of the record); *Buttner v. Comm'r of Soc. Sec.*, No. 18-CV-332, 2019 WL 2724016, at \*5 (M.D. Fla. July 1, 2019) (finding no error when ALJ's determined consultative doctor's opinion was entitled to partial weight because it was internally inconsistent and not supported by doctor's own examination).

### (2)     Dr. Garrison's opinion conflicts with the substantial evidence.

Dr. Garrison's opinion also conflicts with the rest of the medical evidence in this case, including both the opinion evidence and Hurst's treatment records.  The medical opinion evidence consists of Dr. Garrison's opinion and the opinions of three other physicians: Dr. Robert Estock and Dr. Warren Brantley, who offered opinions on Hurst's mental health limitations, and Dr. Celtin Robertson, who offered an opinion on Hurst's physical limitations.

Dr. Estock did not see Hurst but reviewed her mental health records.[2] R. 18.  He opined that Hurst had only mild limitations and concluded that she was not disabled.  R. 18, 97–97.  The ALJ gave this opinion partial weight because she thought Hurst had "more limitations than called for" in Dr. Estock's opinion. R. 18.  Dr. Brantley performed a consultative examination of Hurst on February 6, 2016, and he concluded that she suffered from minimal to mild transient adjustment disorder relating to the death of her mother, which resulted in "slight depression and anxiety" that was "fully remitted" on medication.

---

[2] Plaintiff has raised no issues with the ALJ's determination of Hurst's RFC as it relates to her mental health.  However, a brief summary of the medical opinion evidence is included for the sake of completeness and to show that the ALJ carefully considered all of the opinions and reconciled those opinions with the rest of the medical evidence.

R. 311–13.  He opined that she was stable and had a transient condition that would allow her to "return to work immediately." R. 313.  The ALJ found that this opinion was consistent and supported by the medical evidence, but she assigned the opinion partial weight because it failed to provide a function-by-function assessment of Hurst's ability to work. R. 19.

Dr. Robertson saw Hurst for a consultative examination on February 1, 2016. R. 315.  He noted that her chief complaint was shortness of breath but that she walked without assistance, got on and off the exam table, and was sitting without acute distress. R. 315–16.  Her gait was normal; she could toe/heel walk, squat, and rise; and there was nothing remarkable about her range of motion. R. 317–18.  Her motor strength in both lower and upper extremities was 5/5, and her muscle bulk and tone were normal. R. 318.  Plaintiff was able to grip and hold objects to the palm by the last three digits; she could grasp and manipulate large and small objects with the first three digits; and her thumb functions were normal. R. 318.  Dr. Robertson found no evidence of any problems with her gross or fine motor skills. R. 318.  Based on his evaluation, Dr. Robertson concluded that Hurst had no limitations with her standing or walking capacity, sitting capacity, lifting or carrying capacity, fine or gross manipulation, postural activities, or workplace environmental activities. R. 318–19.  The ALJ explained that she gave this opinion partial weight because, although it was consistent with his own examination, the "overall medical evidence of record would reasonably lead to some limitation." R. 18.

Not only does Dr. Garrison's opinion conflict with his examination and with Dr. Robertson's examination and conclusions, it conflicts with the non-opinion medical

evidence in the case.  The medical records reflect that Dr. John Aldridge treated Hurst approximately a dozen times for hypothyroidism, COPD, anxiety, and depression. R. 296–310, 387–446.  Dr. Aldridge offered no opinion evidence on the nature and severity of Hurst's impairments, but his records consistently show that Hurst had normal lung function and oxygen saturation above 96% throughout her treatment with him.  R. 300, 403 (99% on May 27, 2014); R. 300, 408 (98% on October 1, 2015); R. 411 (96% on October 19, 2015); R. 416 (97% on January 26, 2016); and R. 360–61 (98% on December 19, 2016). Likewise, the records from Hurst's other medical providers always showed normal respiratory functioning. R. 326, 329, 332, 336, and 381.

Finally, Dr. Garrison's opinion is inconsistent with some of Hurst's own testimony at the administrative hearing.  Although Hurst testified that her COPD causes her to get short of breath and be unable to breathe and that she does not have the strength to do the kind of work she used to, she also testified that her COPD is treated with an inhaler and Albuterol and that she has never been hospitalized for this condition. R. 71.  She testified that she can take showers on her own, get dressed on her own, cook and prepare her own meals, do her own grocery shopping, and clean house, although she is careful about the types of cleaners she uses due to her COPD. R. 72–73.  Her ability to perform these activities contradicts Dr. Garrison's restriction of only *occasionally* reaching, handling, fingering, feeling, pushing, and pulling.  She also testified that she cannot lift up to twenty pounds because it would take her breath away, but she can *frequently* lift ten pounds, which contradicts Dr. Garrison's restriction of lifting up to ten pounds only *occasionally*. R. 76.

**(3)    The ALJ did not error in assigning little weight to Dr. Garrison's opinion.**

An ALJ may reject any medical opinion if the evidence supports it. *Aderholt v. Astrue*, No. 11-CV-00829-KOB, 2012 WL 2499164, at *2 (N.D. Ala. June 26, 2012) (citing *Syrock v. Heckler,* 764 F.2d 834, 835 (11th Cir. 1985)). While the ALJ must articulate specific reasons for the rejection, an ALJ is not required to refer specifically to every piece of evidence in his decision. *Id.* (citing *Dyer v. Barnhart,* 935 F.3d 1206, 1222 (11th Cir. 2005)). If an ALJ articulates specific reasons for rejecting a medical opinion and substantial evidence supports those reasons, no reversible error exists. *Id.* (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Although the ALJ did not specifically state that she was rejecting any particular portion of Dr. Garrison's opinion, she expressly stated that she assigned little weight to the opinion due to its internal inconsistencies. R. 18. She also explained the inconsistencies in the opinion. R. 18–19. Further, it is clear that Dr. Garrison's opinion conflicts with some of Hurst's testimony and the opinion of Dr. Robertson, who, like Dr. Garrison, found nothing remarkable in his physical examination of Hurst. Hurst's treating physician did not provide opinion evidence, but his medical records show normal oxygen saturation levels and normal lung functioning, which would not support the limitations imposed by Dr. Garrison or a conclusion that Hurst cannot perform a reduced range of light duty jobs as set forth in the RFC. Because Dr. Garrison saw Hurst one time as a consultative physician, his opinion is internally inconsistent, and his opinion is not supported by the substantial evidence in the record, good cause existed to assign his opinion little weight in

determining Hurst's RFC, and the ALJ did not err by failing to adopt the limitations Dr. Garrison placed on her ability to lift and carry.

**(B)    The ALJ's findings are not internally inconsistent.**

With respect to Plaintiff's argument that the ALJ's RFC assessment is internally inconsistent with her finding that Hurst is unable to perform her past relevant work, the Court disagrees that this finding by the ALJ is internally inconsistent. At the hearing, Hurst testified that her previous jobs required her to be on her feet all day. R. 73. While bagging groceries, she was on her feet about eight hours. R. 75. When she worked in a kitchen, she was on her feet seven or more hours per day. R. 75. When she worked in a deli, she was on her feet eight hours, although this job did allow her to sit on a bench for a few minutes. R. 75. The ALJ found that Hurst has the residual functional capacity to perform light work *with the exertional limitation* of needing the ability to alternate to sitting for 5 minutes after every two hours of standing or one hour of walking. R. 16. *See also* 20 C.F.R. § 404.1569a (defining exertional and non-exertional limitations). Thus, the ALJ did not find that Hurst could perform the full range of light work; instead, her ability to perform light work was subject to the additional limitation of being able to sit for five minutes after two hours of standing or walking. *Id.*

When the ALJ asked the VE a hypothetical question regarding an individual who could perform the full range of light duty work, the VE stated that the individual would be able to do Hurst's past jobs. R. 80. The ALJ asked a second hypothetical regarding an individual who could sit for six hours, who would need the ability to alternate to sitting for five minutes after every two hours of standing, and who would need the option of sitting

for five minutes after walking for one hour. R. 82. The VE testified that such an individual could not perform Hurst's past jobs; however, there would be jobs in the national economy that she could perform. *Id.* He then identified the three jobs listed in the ALJ's RFC. R. 83. Thus, it is clear from the transcript of Hurst's hearing that the ALJ's determination regarding Hurst's past work was based on the exertional limitation of needing to alternate sitting with standing and walking. Thus, the ALJ's opinion is not internally inconsistent. *See Shannon v. Colvin*, No. 12-CV-01400, 2013 WL 4050190, at *12 (S.D. Tex. Aug. 9, 2013) (finding that the ALJ's decision was not internally inconsistent, as it was consistent with vocational expert's testimony that a person with claimant's limitations would not be able to perform past light duty jobs due to handling and reaching limitations but could perform other light duty jobs).

## VII. CONCLUSION

The ALJ thoroughly discussed Hurst's medical history and the record as a whole. She fully explained her reasons for assigning a specific weight to each medical opinion, including the assignment of little weight to Dr. Garrison's opinion, and substantial evidence supports those reasons. Further, the ALJ's determination that Hurst was capable of performing light work and not disabled before her age category changed is not internally inconsistent with her determination that she could not perform her past relevant work. Accordingly, the Court finds that substantial evidence supports the ALJ's RFC finding and her ultimate determination that Hurst was not disabled from the allege date of onset to October 25, 2017. It is hereby

ORDERED that the decision of the Commissioner is AFFIRMED. A separate judgement will issue.

DONE this 11th day of October, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE